**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

| | |
|---|---|
| In re: | |
| BLOCKBUSTER INC., *et al.*, | Chapter 11 |
| | Case No. 10-14997 (BRL) |
| Debtors. | (Jointly Administered) |

-----------------------------------------------------------------X
LYME REGIS PARTNERS, LLC

        Plaintiff

   vs.

| | |
|---|---|
| CARL ICAHN, ICAHN PARTNERS LP, ICAHN PARTNERS MASTER FUND II L.P., ICAHN CAPITAL LP, AND ICAHN ASSOCIATES CORP. | Adv. Proc. No. 10-05524 (BRL) |

        Defendants
-----------------------------------------------------------------X

APPEARANCES:

CADWALADER, WICKERSAM & TAFT LLP
John J. Rapisardi, Esq.
One World Financial Center
New York, New York, 10281
Telephone: (212) 504-6000
Facsimile:  (212) 504-6666
joh.rapisardi@cwt.com

Peter Friedman, Esq.
700 Sixth Street, N.W.
Washington, DC 20001
Telephone: (202) 862-2000
Facsimile:  (212) 504-6666
Peter.friedman@cwt.com

*Attorneys for Carl Icahn, Icahn Partners LP, Icahn
Partners Master Fund LP, Icahn Partners Master Fund
II L.P., Icahn Partners Master Fund III L.P.,
Icahn Capital LP, and Icahn Associates Corp.*

1

Pg 2 of 8


The McMillan Law Firm, APC
Scott A. McMillian
Evan A. Kalooky
4670 Nebo Drive, Suite 200
La Mesa, CA 91941-5230
Telephone: (619) 464-1500 x 14
Facsimile:  (206) 600-5095

*Attorneys for Lyme Regis Partners, LLC,
a New York Limited Liability Company*

COOLEY LLP
Jay R. Indyke
Richard S. Kanowitz
Jeffrey L. Cohen
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 479-6000

*Counsel for the Official Committee of Unsecured Creditors*

Before: Hon. Burton R. Lifland
         United States Bankruptcy Judge

# BENCH MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR AN ORDER DISMISSING WITH PREJUDICE THE ADVERSARY COMPLAINT FOR <u>EQUITABLE SUBORDINATION AND RECHARACTERIZATION</u>

Before this Court today is an adversary proceeding commenced by the filing of a complaint on December 23, 2010 by Lyme Regis Partners, LLC ("Lyme Regis") seeking to equitably subordinate and/or recharacterize the claims of creditors Carl Icahn, Icahn Partners LP, Icahn Partners Master Fund LP, Icahn Partners Master Fund II L.P., Icahn Partners Master Fund III L.P., Icahn Capital LP, and Icahn Associates Corp (collectively, the "Icahn Entities") in the Blockbuster Inc. bankruptcy proceedings. The Icahn Entities moved to dismiss (the "Motion") the adversary complaint with prejudice on the basis of lack of standing and failure to state a claim upon which relief can be granted on January 27, 2011. Lyme Regis responded on

February 22, 2011, with an objection (the "Objection") to the Motion stating that it has elected to dismiss voluntarily, and without prejudice, its recharacterization claim but continues to pursue its equitable subordination claim. The Icahn Entities then filed a reply on March 14, 2011 to Lyme Regis's Objection reiterating their reasons for why Lyme Regis's equitable subordination claim fails as matter of law. The Court takes notice that the time period in which Lyme Regis had to amend its complaint as a matter of course under Rule 15(a) of the Federal Rules of Civil Procedure has elapsed. *See* Fed.R.Civ.P. 15(a).

On December 16, 2010, I denied Lyme Regis's motion seeking relief under Bankruptcy Rule 2004 and a separate motion requesting derivative standing to pursue claims on behalf of the Debtors against Mr. Icahn and his affiliates. In applying standard that the Second Circuit sets forth in *Unsecured Creditors Committee of Debtor STN Enterprises, Inc. v. Noyes (In re STN Enters., Inc.),* 779 F.2d 901 (2d Cir. 1985), which, *inter alia*, requires that the claim is (a) in the interest of the estate, and (b) necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings, I found at that time that "no case has been made for the kind of relief that [Lyme Regis has] requested, and that Lyme Regis's arguments were not only "amorphous and soft," but "were spurred on by [a parochial] self-interest rather than the fiduciary interest that is being pursued by those parties in interest who have the most to lose here" (i.e., the unsecured creditors committee). Dec. 16, 2010 Hearing Transcript, at 30-31. These same arguments are before me today. Indeed, the same facts that Lyme Regis alleged in support of its earlier motions appear to be virtually identical to the allegations in its Complaint, which notably, was filed six days after I denied Lyme Regis's first request for relief in these proceedings. The only difference this time around is that these arguments and allegations have been re-packaged as a claim for equitable subordination.

Because the remedy of equitable subordination is designed to vindicate the rights of the estate as a whole, that remedy, with limited exception, can only be brought by the debtor. This is precisely what the Second Circuit concluded in *Official Committee of Unsecured Creditors of AppliedTheory Corp. v. Halifax, L.P. (In re AppliedTheory Corp.)* when it refused "to adopt a bright-line rule, under which equitable subordination claims may be brought directly by a creditor, creditors, or a creditors' committee." 493 F.3d 82, 86 (2d Cir. 2007). The Second Circuit squarely held that if such a party-in-interest was able to pursue a claim for equitable subordination, then that party would first have to obtain derivative standing from the bankruptcy court under *STN*. *Id.* The only time that a *STN* review may not be required, the Second Circuit observed, is if an individual creditor is able to show a "particularized injury" for which a "direct claim might be …available." *Id.* at 87. In all other instances, adopting the *STN* standard in the context of equitable subordination is warranted because prior approval by the bankruptcy court would prevent reorganizations from "routinely spinning out of control" and would "help[] prevent committees and individual creditors from pursuing adversary proceedings that may provide them with private benefits but result in a net loss to the entire estate." *Id*. at 86.

The Official Committee of Unsecured Creditors (the "Committee") of Blockbuster Inc., and its affiliated chapter 11 debtors, appears today pursuant to 11 U.S.C. § 1109(b) and the Second Circuit's decision in *Term Loan Holder Committee v. Ozer Group, LLC (In re Caldor Corp.),* 303 F.3d 161 (2d Cir. 2002) as a party-in-interest relative to this adversary proceeding to report on its own investigation into the potential to bring an Icahn equitable subordination claim or any other such claim predicated on the same self dealing allegations contained in the Complaint. The Committee, following extensive Rule 2004 and testimonial discovery, has concluded that it has found no basis for claims to be brought against the Icahn Entities.

4

Nevertheless, Lyme Regis asserts that as an individual creditor it need not seek approval from this court to bring its equitable subordination claim because the Second Circuit's decision in *AppliedTheory* is only applicable to equitable subordination claims asserted by a creditors' committee. I disagree. *AppliedTheory* clearly establishes that an individual creditor, like Lyme Regis, cannot pursue a cause of action for equitable subordination without bankruptcy court approval unless the creditor can show it suffered a particularized injury. *See id.* at 86, 87. Underscoring this conclusion is the fact that the Second Circuit expressly stated that the *STN* line of cases applies to both individual creditors and a creditors' committee and imported that line of cases into the equitable subordination context. *See id.* Thus, Lyme Regis must allege particularized harm to bring its equitable subordination claim as an individual creditor without *STN* derivative standing.

As this Court explained in *Sec. Investor Prot. Corp. v. Bernard Madoff Inv. Sec., LLC*, a particularized injury is an "injury 'significantly different from the injuries to creditors in general." 429 B.R. 423, 431 (Bankr. S.D.N.Y. 2010). After a thorough review of the Complaint, I could not identify a single instance alleging an injury truly specific to Lyme Regis that was distinct from other creditors. The Complaint merely states that "Senior Unsecured Noteholders would not recover any value thorough the bankruptcy planned by the Debtor with the Defendants assistance'; and/or Defendants' misconduct conferred an unfair advantage on the Defendants, i.e., priority over the Senior Secured Noteholders." Compl. ¶ 37. Any unsecured creditor could assert identical allegations to those in the Complaint, and for this precise reason the Second Circuit held in *AppliedTheory* that a party-in-interest must obtain derivative standing under *STN,* if that party cannot establish a particularized harm. Indeed, allowing individual unsecured creditors, like Lyme Regis, to go forward with their claims for generalized harms could wreak

5

havoc on any reorganization and result in a "net loss to the entire estate." *In re AppliedTheory*, 493 F.3d at 86.

Presently, the Complaint fails to allege that Lyme Regis sustained a particularized harm as required under *AppliedTheory*. Thus, it must be dismissed with prejudice as a matter of law on standing grounds, if not amended. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993). "One appropriate basis for denying leave to amend is if the proposed amendment would be futile." *Lucente v. International Business Machines Corp.,* 310 F.3d 243,258 (2d Cir. 2002). Such is the case when the proposed claim could not withstand a motion to dismiss pursuant to Federal Rule 12(b)(6). *Id.*

Here the pleading is porous - essentially skin and bones, and largely without the flesh to justify the conclusions presented. Essential facts are largely pled on unsourcecd information and belief, all of which is hardly calculated to support a plausibility finding under the *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009) line of cases. Lyme Regis, in its Objection to dismissal under Federal Rule 12(b)(6), includes a request for leave to re-plead if the motion to dismiss were to be granted. Here, however, the basic pleading is so sparse that leave to re-plead would be futile.

Federal Rule 12(b)(6), made applicable to this adversary proceeding by Bankruptcy Rule 7012(b), provides that a motion to dismiss should be granted where a complaint fails to state a claim as a matter of law. To satisfy its pleading obligations, Lyme Regis must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Moreover, to plead equitable

6

subordination adequately, the Complaint must contain enough facts to satisfy each part of a three-part test that (1) the Defendants engaged in "inequitable conduct, (2) the misconduct caused injury to the creditors or conferred an unfair advantage on the defendant-claimant, and (3) bestowing the remedy of equitable subordination is not inconsistent with bankruptcy law." *In re Mobile Steel Co.,* 563 F.2d 692, 700 (5th Cir. 1977).  Stated in more colloquial terms, to plead equitable subordination adequately, Lyme Regis must allege two critical elements: the defendant must have done something wrong and second, the creditor has to have been harmed by the defendant's conduct. Lyme Regis has not adequately alleged either element in the Complaint.

The gist of Lyme Regis's argument is that Mr. Icahn was a "non-statutory" insider after resigning from the Board, and along with the Icahn Entities "engaged  in inequitable conduct, i.e., using their position of power and inside information to sell their equity interests and essentially convert them into a potentially controlling amount [of] Senior Secured Notes (i.e. debt), with knowledge that such notes would allow Defendants to gain control of the Debtor during and after it emerged from bankruptcy." Compl. ¶ 37.  The Complaint, however, does not allege any particular wrongful conduct by Mr. Icahn or any of the Icahn Entities.  There is no allegation that Mr. Icahn breached any duties as a director and insider of Blockbuster while a member of its Board of Directors, or that the Icahn Entities engaged in egregious or otherwise improper conduct in connection with acquiring Senior Secured Notes or in their capacity as Senior Secured Noteholders.  Indeed, the only "non-information and belief" facts alleged in the Complaint with respect to Mr. Icahn's actions as a member of the Board are that Blockbuster issued the Senior Secured Notes in October 2009 and that the Senior Notes contained mandatory redemption provisions that "purportedly cost Blockbuster $100 million." Compl. ¶ 37.  Lyme Regis also fails to allege facts sufficient to show that Mr. Icahn or any of the Icahn Entities were

non-statutory insiders, nor has it adequately pled any sort of close relationship that would justify such a conclusion.

The fatal blow to Lyme Regis's Complaint, however, lies in its failure to allege facts that Lyme Regis was at all injured by the Icahn Entities' conduct relating to Blockbuster. Lyme Regis argues that "it will not receive payment on its notes because the Icahn Defendants defeated its expectancy" through their alleged inequitable conduct. Objection at 41. This argument is completely unsupported by the facts alleged in the Complaint. First, because Lyme Regis has failed to allege that it held the Subordinated Notes before the Senior Secured Notes were issued, it has not alleged it ever had an expectation of payment defeated by the issuance of the Senior Secured Notes. Second, recoveries of Subordinated Noteholders will be directed by the Debtors' total distributable value and/or the absolute priority rule. The Senior Secured Notes were senior to Lyme Regis before the Icahn Entities acquired this debt. Thus, the fact the Icahn Entities acquired Senior Secured Notes – or how they became owners – is irrelevant as pled to Lyme Regis's ultimate recovery in these cases.

For all the foregoing reasons, including lack of standing, the motion to dismiss is granted. Furthermore, because all of Lyme Regis's pleading failures are fundamental, and cannot be remedied, this Court finds that permitting Lyme Regis to re-plead would be futile. Accordingly this Court denies leave to amend the Complaint, and grants the Motion to Dismiss with prejudice.

IT IS SO ORDERED.

Dated: New York, New York                /s/ Burton R. Lifland
     March 17, 2011                       United States Bankruptcy Judge